UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARCH INSURANCE COMPANY and OUT OF TOWNE LLC d/b/a RED SKY TRAVEL INSURANCE,

Plaintiffs,

Case No.:

v.

GULF COAST PROPERTY MANAGEMENT, LLC, and ZACHARI ADAIR,

Defendants.
_______________________________________/

**COMPLAINT**

Plaintiffs, Arch Insurance Company ("Arch") and Out of Towne LLC d/b/a Red Sky Travel Insurance ("Red Sky") (collectively, "Plaintiffs"), by and through their undersigned counsel, allege as follows:

**PARTIES**

1. Plaintiff Arch Insurance Company is a corporation organized under the laws of the State of Missouri with its principal place of business located at Harborside 3, 210 Hudson Street, Suite 600, Jersey City, New Jersey 07311.

2. Arch is a citizen of Missouri and New Jersey for purposes of diversity jurisdiction.

3. Plaintiff Out of Towne LLC d/b/a Red Sky Travel Insurance is a wholly owned subsidiary of Arch.

4. Red Sky administers and markets travel insurance products underwritten by Arch.

5. Arch is Red Sky's sole member.

6. Red Sky is therefore a citizen of Missouri and New Jersey for purposes of diversity jurisdiction.

7. At all relevant times, Arch underwrote the travel insurance policies offered and sold through Red Sky's travel insurance program.

8. Arch had a direct financial interest in the premiums collected for policies underwritten by Arch and sold through the travel insurance program administered by Red Sky.

9. Defendant Gulf Coast Property Management, LLC ("GCPM") is a Florida limited liability company with its principal place of business located at 11051 Gatewood Drive, Bradenton, Florida 34211.

10. Upon information and belief, GCPM's members are all citizens of Florida.

11. GCPM is therefore a citizen of Florida for purposes of diversity jurisdiction.

12. At all relevant times, GCPM conducted business in Manatee County, Florida.

13. Defendant Zachari Adair ("Adair") is an individual and, on information and belief, a citizen of Florida.

14. At all relevant times, Adair served as GCPM's Chief Operating Officer and participated directly in matters concerning GCPM's accounting, financial reporting, reservation systems, and administration of the travel insurance program at issue in this action.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338 because Plaintiffs assert a claim arising under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

16. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' state-law claims because those claims arise from the same case or controversy as Plaintiffs' federal claim.

18. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391(b)(1) because GCPM resides in this District for venue purposes.

19. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

20. The Tampa Division is the proper division because GCPM maintains its principal place of business in Manatee County, Florida, and the events giving rise to this action occurred in substantial part in Manatee County, Florida.

## GENERAL ALLEGATIONS

21. On or about February 1, 2023, Red Sky and GCPM entered into a written Travel Insurance Program Agreement (the "Agreement"). A copy of the Agreement is attached as Exhibit A.

22. Under the Agreement, GCPM received authority to market and sell Red Sky's "Trip Preserver" travel insurance products to customers booking vacation rentals and travel accommodations through GCPM. The specific Trip Preserver product offered by GCPM was known as "Sun Trip Preserver SFP90."

23. Red Sky markets its travel insurance program under the "Trip Preserver" service mark and uses the Trip Preserver designation in connection with the travel insurance products and services it administers and markets.

24. Arch underwrote the travel insurance policies sold through the program.

25. Red Sky administered the program and managed premium reporting and remittance.

26. GCPM's Chief Executive Officer, Andy Moore, executed the Agreement on behalf of Defendant.

27. The Agreement provided that the program cost for the travel insurance products equaled 7.75% of the total booked trip cost paid by GCPM's customer.

28. GCPM collected travel insurance premiums directly from insured guests purchasing travel insurance coverage.

29. The Agreement authorized GCPM to retain only a forty-five percent (45%) commission from the premiums collected.

30. GCPM had no ownership interest in the remaining net premiums.

31. The Agreement required GCPM to remit net premiums, defined as premiums less GCPM's 45% commission, to Red Sky by the 15th day of the month after payment by the insured.

32. The Agreement required GCPM to report all policies sold and all premiums collected through monthly premium reports.

33. Plaintiffs relied on GCPM's reporting and remittance obligations in underwriting, administering, and servicing travel insurance policies issued through the program.

34. Plaintiffs issued and administered travel insurance coverage to GCPM's customers in reliance on GCPM's contractual obligations to accurately report policies sold and timely remit net premiums.

35. GCPM acted as the collection agent for travel insurance premiums sold under the Agreement.

36. GCPM collected premium funds from insured guests on Plaintiffs' behalf.

37. GCPM possessed only a limited contractual right to retain its 45% commission.

38. GCPM had no right to retain the net premiums owed to Plaintiffs.

39. Beginning no later than October 2023, GCPM failed to remit net premiums owed under the Agreement.

40. Plaintiffs repeatedly notified GCPM that GCPM had failed to provide required premium reports and remit the corresponding net premiums.

41. On January 23, 2025, Plaintiffs advised Defendant's Chief Operating Officer, Adair, that Red Sky had been paying claims submitted by GCPM's customers but had not received the corresponding premium reports for customers

who purchased travel insurance. Plaintiffs requested that GCPM generate the missing premium reports for the period from October 1, 2023 through December 31, 2024.

42. Adair acknowledged the issue that same day, responding that "if this is true, this is a problem." Adair further acknowledged that GCPM and Red Sky had "inquired about and followed up on this issue multiple times to ensure everything was working properly."

43. Despite acknowledging the reporting issue and Plaintiffs' prior efforts to address it, Adair advised Red Sky: "We've already closed our books on the timeframe in question.".

44. Adair also advised Red Sky that GCPM was transitioning from its existing reservation software system to another system.

45. After receiving direct notice of the reporting deficiency, Adair had actual knowledge that Red Sky had been paying claims submitted by GCPM customers while GCPM had failed to provide corresponding premium reports and remittances.

46. Adair also knew that Plaintiffs depended on GCPM's internal reservation and accounting records to identify the travel insurance policies sold through GCPM, the premiums collected for those policies, and the amounts owed to Plaintiffs.

47. Despite receiving direct notice of the reporting deficiency, acknowledging the problem, and acknowledging Plaintiffs' prior efforts to address it, Adair did not provide Plaintiffs with a complete accounting identifying the travel insurance policies sold, premiums collected, and net premiums owed for the period at issue.

48. GCPM did not dispute that it had received gross travel insurance premiums from its customers. GCPM instead attributed its failure to properly report the transactions to issues involving its reservation software and later relied on the closure of its books for the relevant period in declining to address the unpaid premiums.

49. GCPM's reservation and accounting records reflected its receipt of gross travel insurance premiums from its customers, despite GCPM's failure to provide the corresponding premium reports and remit the net premiums owed to Red Sky.

50. GCPM knew that it collected travel insurance premiums from its customers, knew that Red Sky had not received the corresponding premium reports and net premium remittances, and failed to cure those deficiencies after Red Sky brought them directly to GCPM's attention.

51. Plaintiffs repeatedly notified GCPM that premium remittances were overdue and requested payment.

52. Plaintiffs transmitted invoices, account statements, payment histories, and written demands reflecting the outstanding premium balances.

53. GCPM received the invoices, account statements, payment histories, and written demands.

54. GCPM did not timely object to the amounts owed.

55. Despite repeated demands, GCPM failed and refused to remit the outstanding net premiums.

56. Based on Plaintiffs' books and records, invoices, payment ledgers, and premium reporting available as of the filing of this action, GCPM owes at least $73,360.13 in unpaid net travel insurance premiums for the period from October 1, 2023 through March 14, 2025.

57. After Plaintiffs issued initial demands, Plaintiffs identified an additional unreported policy transaction involving Claim No. TVLC204598225 submitted by GCPM's guest J.S.

58. Plaintiffs determined that the J.S. claim was approved and paid. Plaintiffs paid $2,557.86 in insurance benefits on the J.S. claim despite GCPM's failure to report the underlying policy transaction or remit the associated premium.

59. The insured produced proof reflecting payment of a gross insurance premium in the amount of $930.62.

60. The J.S. transaction resulted in an additional net premium due to Red Sky in the amount of $516.24.

61. The presently identified unpaid net premium balance equals at least $73,876.37. Plaintiffs also paid $2,557.86 in insurance benefits on the previously unreported J.S. policy, resulting in presently identified losses totaling at least $76,434.23, exclusive of prejudgment interest, attorneys' fees, costs, and additional damages identified through further investigation or discovery.

62. On information and belief, the J.S. transaction was not an isolated occurrence.

63. On information and belief, GCPM continued offering and selling Red Sky travel insurance products after failing to remit premiums owed under the Agreement.

64. On information and belief, GCPM failed to report additional policy transactions to Plaintiffs.

65. By February 24, 2026, GCPM owed Red Sky at least $73,360.13 in unpaid net premiums collected in connection with the Trip Preserver program.

66. On February 24, 2026, Red Sky terminated the Agreement based on GCPM's continuing failure to remit the net premiums it collected in connection with the Trip Preserver program. A copy of Red Sky's February 24, 2026 termination notice is attached as Exhibit B.

67. The termination notice expressly directed GCPM to "immediately cease offering the Plans to prospective clients, remove all references to Red Sky Travel Insurance and/or Plans from your website and pull all marketing collateral referencing Red Sky and/or Plans."

68. Red Sky also directed GCPM to provide a roster of all Trip Preserver plans enrolled through the effective date of termination, account for all plans enrolled as of the effective date of termination, and remit all premiums in GCPM's possession for all plans placed, including the outstanding net premiums.

69. GCPM thus received express notice that it no longer possessed authority to market or offer Red Sky's Trip Preserver travel insurance program and that it was required to remove references to Red Sky and Trip Preserver from its website and marketing materials.

70. GCPM did not comply with those directives.

71. After Red Sky terminated the Agreement, GCPM continued incorporating Red Sky and Trip Preserver into the Terms and Conditions governing vacation rentals offered through GCPM's Gulf Coast Vacation Rentals website.

72. As of the filing of this Complaint, GCPM's current Terms and Conditions remain publicly available on its website, https://www.gcvacationrentals.com/terms-conditions/ (last accessed

September 22, 2026) and continue to incorporate Red Sky's Trip Preserver program into the terms governing GCPM's vacation rental transactions. A true and correct copy of the Terms and Conditions available on GCPM's website as of the filing of this Complaint is attached as Exhibit C.

73. GCPM's current Terms and Conditions include a section entitled "Travel Insurance," which states:

> "We recommend that you purchase travel insurance to help protect against financial loss if you must cancel your reservation for a covered reason. Gulf Coast Vacation Rentals offers a third-party product, Trip Preserver, which is available for most reservations and includes coverage for trip cancellation or interruption due to listed covered reasons, as well as additional benefits including coverage for losses due to trip delay or medical emergencies while traveling."

74. The same provision directs GCPM's customers to Red Sky's website - https://www.redskyinsurance.com/products/trip-preserver - for additional information concerning Trip Preserver and its eligibility, benefits, terms, and conditions.

75. GCPM's current Terms and Conditions separately include an additional "Travel Insurance" provision that states:

> "Gulf Coast Vacation Rentals advises guests to obtain appropriate and comprehensive travel insurance that covers Renter and all Occupants and that includes coverage for personal injury, illness or disease, and property damage or loss, and to help protect against financial loss if you must cancel your reservation for a covered reason."

76. That provision further states:

> "Trip Preserver coverage is subject to separate eligibility requirements, terms, and conditions. If you elect to purchase Trip Preserver coverage for your reservation, you acknowledge that Gulf Coast Vacation Rentals may collect a percentage of the fee you pay for coverage as commission."

77. GCPM's current Terms and Conditions thus continue to represent to customers that Gulf Coast Vacation Rentals offers Trip Preserver, that customers may purchase Trip Preserver coverage in connection with their reservations, and that GCPM may collect a commission from those purchases.

78. These representations remain incorporated into GCPM's current Terms and Conditions despite Red Sky's February 24, 2026 termination of the Agreement and express direction that GCPM immediately cease offering the Trip

Preserver program and remove all references to Red Sky and Trip Preserver from its website and marketing materials.

79. GCPM's continued use of Red Sky and the Trip Preserver service mark in its current Terms and Conditions after termination was not authorized by Plaintiffs.

80. GCPM's continued incorporation of Trip Preserver into its customer-facing Terms and Conditions represents to prospective customers that GCPM remains authorized to offer Trip Preserver coverage in connection with GCPM's vacation rentals and remains entitled to collect commissions from the sale of that coverage.

81. GCPM continues using Red Sky's Trip Preserver program in connection with its vacation rental business despite owing Plaintiffs premiums previously collected through that same program and despite Red Sky's demand for a complete accounting of all policies sold and premiums collected.

82. GCPM did not disclose to Plaintiffs all transactions conducted through the Trip Preserver program. Plaintiffs identified at least one such transaction only after Defendant's guest, J.S., submitted Claim No. TVLC204598225 and evidence established that she paid a $930.62 insurance premium.

83. GCPM's failure to report the J.S. transaction, its failure to provide the accounting demanded by Red Sky, and its continued use and promotion of Trip Preserver after termination support Plaintiffs' allegation that GCPM's failure to report and remit premiums was knowing and intentional rather than an inadvertent accounting or payment dispute.

84. On information and belief, GCPM collected additional premiums through transactions that it did not disclose to Plaintiffs and retained the associated net premiums.

85. The full number and value of those transactions remain within GCPM's possession and control and require an accounting and discovery to determine.

86. The discovery of previously undisclosed policy transactions demonstrates that the presently identified damages likely understate the total amount of premiums collected and retained by GCPM.

87. GCPM did not merely fail to pay an invoice.

88. GCPM collected specific and identifiable insurance premium funds from individual insured guests on Plaintiffs' behalf, retained the contractually authorized commission, and exercised dominion and control over the remaining premium funds despite having no ownership interest in those funds.

89. GCPM retained premium funds belonging to Plaintiffs after receiving repeated demands for payment.

90. GCPM continues to hold itself out to its customers as authorized to offer Trip Preserver and collect commissions in connection with Trip Preserver coverage even though Red Sky terminated that authority and demanded an accounting of the premiums Defendant collected.

91. GCPM's failure to remit those funds damaged Plaintiffs in an amount presently known to exceed $73,876.37, exclusive of prejudgment interest, attorneys' fees, costs, and additional damages identified through discovery.

## CONDITIONS PRECEDENT

92. On May 20, 2026, Plaintiffs served GCPM with a written demand pursuant to section 772.11, Florida Statutes. A copy of the statutory demand is attached as Exhibit D.

93. The statutory demand demanded payment of the wrongfully retained travel insurance premium funds and the treble damages amount available under section 772.11, Florida Statutes.

94. The statutory demand advised GCPM of Plaintiffs' intent to pursue civil theft remedies if GCPM failed to pay within thirty (30) days.

95. GCPM received the statutory demand.

96. By correspondence dated June 12, 2026, GCPM, through counsel, rejected Plaintiffs' demand and denied liability under section 772.11, Florida Statutes.

97. More than thirty (30) days elapsed after GCPM received the statutory demand.

98. GCPM failed to tender payment of the demanded amount within the statutory thirty-day period.

99. All conditions precedent to the maintenance of Plaintiffs' claims, including the civil theft claim asserted pursuant to sections 812.014 and 772.11, Florida Statutes, have been satisfied, waived, or otherwise occurred.

**COUNT ONE**
(Breach of Contract as and against GCPM)

100. Plaintiffs repeat and reallege paragraphs 1 through 99 as though fully set forth herein.

101. The Agreement constitutes a valid and enforceable contract between Red Sky and GCPM.

102. Arch is Red Sky's parent company, underwrote the insurance policies issued pursuant to the Agreement, and possesses a direct financial interest in the premiums collected for those policies.

103. Arch is an intended third-party beneficiary of the Agreement because the Agreement authorized GCPM to sell travel insurance products underwritten by Arch and required GCPM to remit the net premiums owed for those policies.

104. Plaintiffs performed all obligations required of them under the Agreement.

105. GCPM materially breached the Agreement by failing to remit net premiums collected from insured guests.

106. GCPM materially breached the Agreement by failing to timely report all policies sold through the program.

107. GCPM materially breached the Agreement by failing to accurately account for all premiums collected.

108. GCPM materially breached the Agreement by retaining net premium funds belonging to Plaintiffs.

109. GCPM materially breached the Agreement by failing to comply with its monthly reporting and remittance obligations.

110. GCPM further breached the Agreement by continuing to market and promote Red Sky's Trip Preserver travel insurance program after Red Sky terminated the Agreement and revoked GCPM's authority to offer the program.

111. GCPM failed to provide the complete accounting of policies and premiums demanded in connection with the termination of the Agreement and

continues to use Red Sky and Trip Preserver in its customer-facing Terms and Conditions after termination.

112. As a direct and proximate result of GCPM's breaches, Plaintiffs sustained damages in an amount presently known to exceed $73,876.37, together with additional damages to be determined through discovery, prejudgment interest, costs, and all other damages recoverable under Florida law.

WHEREFORE, Plaintiffs demand judgment against GCPM for compensatory damages, prejudgment interest, taxable costs, and such other and further relief as the Court deems just and proper.

**COUNT TWO**
(ACCOUNT STATED as and against GCPM)

113. Plaintiffs repeat and reallege paragraphs 1 through 112 as though fully set forth herein.

114. Plaintiffs regularly rendered invoices, account statements, reconciliations, and demands reflecting the amounts due from GCPM.

115. GCPM received the invoices, account statements, reconciliations, and demands.

116. GCPM retained those statements without timely objection to the balances reflected therein.

117. By its conduct, GCPM acknowledged the correctness of the stated account or failed to object within a reasonable time.

118. The balance reflected in the account remains unpaid.

119. GCPM owes Plaintiffs at least $73,876.37, together with additional amounts identified through investigation and discovery.

WHEREFORE, Plaintiffs demand judgment against GCPM for damages, prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

**COUNT THREE**
(Open Account as and against GCPM)

120. Plaintiffs repeat and reallege paragraphs 1 through 119 as though fully set forth herein.

121. Plaintiffs and GCPM maintained an ongoing commercial relationship involving the sale of travel insurance products, collection of premiums, monthly reporting, and monthly remittance obligations.

122. Pursuant to that ongoing business relationship, GCPM became indebted to Plaintiffs for unpaid premium amounts.

123. Plaintiffs maintained books and records reflecting premiums reported, commissions earned, payments received, and balances due.

124. Plaintiffs' account records reflect that GCPM owes at least $73,876.37, exclusive of additional unpaid premium amounts identified through discovery.

125. Despite demand, GCPM failed and refused to pay the outstanding balance on the account.

WHEREFORE, Plaintiffs demand judgment against GCPM for damages, prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

**COUNT FOUR**
(CONVERSION as and against GCPM)

126. Plaintiffs repeat and reallege paragraphs 1 through 125 as though fully set forth herein.

127. GCPM collected specific and identifiable travel insurance premium payments from individual insured guests purchasing travel insurance under the Agreement.

128. GCPM collected those premium payments on Plaintiffs' behalf.

129. GCPM possessed only a limited contractual right to retain its agreed 45% commission.

130. GCPM had no ownership interest in the remaining net premium funds.

131. The net premium funds constituted identifiable property belonging to Plaintiffs.

132. GCPM knowingly exercised dominion and control over the net premium funds in a manner inconsistent with Plaintiffs' ownership rights.

133. Plaintiffs repeatedly demanded that GCPM remit the net premium funds.

134. GCPM failed and refused to remit those funds.

135. Plaintiffs also demanded that GCPM account for all Trip Preserver plans sold and all associated premiums in GCPM's possession when Plaintiffs terminated GCPM's authority to participate in the program.

136. GCPM failed to provide the requested accounting and continues to represent to customers through its current Terms and Conditions that Trip Preserver remains available through GCPM and that GCPM may collect a commission from the purchase of that coverage.

137. GCPM's continued use of the Trip Preserver program after termination, together with its failure to report known policy transactions and account for premiums collected, further demonstrates GCPM's exercise of control over Plaintiffs' property inconsistent with Plaintiffs' rights.

138. GCPM's conduct deprived Plaintiffs of their right to possess and receive the net premium funds.

139. As a direct and proximate result of GCPM's conversion, Plaintiffs sustained damages in an amount presently known to exceed $73,876.37, together with additional damages identified through discovery.

WHEREFORE, Plaintiffs demand judgment against GCPM for compensatory damages, prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

**COUNT FIVE**

(CIVIL THEFT - Fla. Stat. §§ 812.014 and 772.11 as and against GCPM)

140. Plaintiffs repeat and reallege paragraphs 1 through 139 as though fully set forth herein.

141. GCPM knowingly obtained possession of specific and identifiable travel insurance premium funds collected from insured guests purchasing travel insurance policies issued through Plaintiffs' program.

142. GCPM collected those premium funds on Plaintiffs' behalf.

143. GCPM possessed no ownership interest in the net premium funds beyond its expressly authorized contractual commission.

144. GCPM knowingly retained, concealed, and exercised unauthorized dominion and control over Plaintiffs' premium funds despite repeated demands for remittance.

145. GCPM failed to report at least one policy transaction involving Claim No. TVLC204598225 for J.S. despite insurance coverage being issued and a claim being paid.

146. The J.S. transaction evidences GCPM's failure to account for all premium funds collected under the program.

147. On information and belief, GCPM similarly failed to report additional policies sold through the program and retained the associated premium funds.

148. GCPM's conduct continued after Plaintiffs expressly terminated GCPM's authority to offer Red Sky's Trip Preserver products and demanded a complete accounting of all policies sold and premiums collected.

149. Despite that termination, GCPM continues to incorporate Red Sky and Trip Preserver into the Terms and Conditions governing its vacation rental transactions.

150. As of the filing of this Complaint, GCPM's current Terms and Conditions continue to represent to prospective customers that Gulf Coast Vacation Rentals "offers" Trip Preserver, that customers may elect to purchase Trip Preserver coverage for their reservations, and that GCPM may collect a percentage of the fee paid for Trip Preserver coverage as a commission.

151. GCPM continues making those representations despite Red Sky's express direction that GCPM cease offering Trip Preserver and remove references to Red Sky and the Trip Preserver program from GCPM's website.

152. GCPM lacks authority to represent that it offers Trip Preserver or remains entitled to collect commissions in connection with the sale of Trip Preserver coverage.

153. GCPM's continued use and promotion of the Trip Preserver program after termination, together with its failure to report known policy transactions and account for premiums collected, supports Plaintiffs' allegation that GCPM

knowingly concealed insurance transactions and exercised unauthorized control over premium funds belonging to Plaintiffs.

154. GCPM's conduct was not limited to a failure to satisfy a contractual debt.

155. GCPM used Plaintiffs' travel insurance program in connection with its vacation rental business, collected specific and identifiable insurance premiums from individual insured guests, failed to disclose all resulting transactions, retained net premiums belonging to Plaintiffs, and continues holding itself out as authorized to offer Plaintiffs' program after Plaintiffs terminated GCPM's authority to do so.

156. GCPM's continued use of Red Sky and Trip Preserver after receiving the February 24, 2026 termination notice further supports Plaintiffs' allegation that GCPM's failure to report and remit premium funds was knowing and intentional rather than an inadvertent failure to perform a contractual obligation.

157. GCPM collected specific and identifiable premium funds from individual insureds, possessed only a limited contractual right to retain its commission, and knowingly retained the remaining premium funds after repeated demands despite having no ownership interest in those funds.

158. GCPM knowingly obtained or used Plaintiffs' property with the intent to appropriate the property to its own use or to deprive Plaintiffs of their property.

159. GCPM's conduct constitutes theft under section 812.014, Florida Statutes.

160. Plaintiffs served GCPM with the written demand required by section 772.11, Florida Statutes, on May 20, 2026.

161. More than thirty (30) days elapsed after GCPM received the statutory demand.

162. GCPM failed to tender payment of the demanded amount within the statutory demand period.

163. As a direct and proximate result of GCPM's civil theft, Plaintiffs sustained actual damages presently known to exceed $73,876.37.

164. Pursuant to section 772.11, Florida Statutes, Plaintiffs are entitled to recover treble damages, reasonable attorneys' fees, taxable costs, prejudgment interest, and all other relief authorized by law.

WHEREFORE, Plaintiffs demand judgment against GCPM for actual damages, treble damages pursuant to section 772.11, Florida Statutes, reasonable attorneys' fees, prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

**COUNT SIX**

(BREACH OF CONTRACTUAL INDEMNITY as and against GCPM)

165. Plaintiffs repeat and reallege paragraphs 1 through 164 as though fully set forth herein.

166. The Agreement contains an indemnity provision requiring Red Sky and GCPM to indemnify, defend, and hold each other harmless from and against costs, expenses, liabilities, losses, damages, claims, and attorneys' fees arising out of or resulting from breaches or defaults under the Agreement.

167. GCPM breached the Agreement by failing to remit net premiums owed to Plaintiffs.

168. GCPM further breached and defaulted under the Agreement by failing to report all policies sold and premiums collected and by continuing to use and promote Red Sky's Trip Preserver program after termination of GCPM's authority to do so.

169. As a result of GCPM's breach and default, Plaintiffs incurred and continue to incur damages, expenses, costs, and attorneys' fees.

170. Plaintiffs are entitled to recover all damages and relief permitted under the Agreement and applicable law.

WHEREFORE, Plaintiffs demand judgment against GCPM for damages, prejudgment interest, taxable costs, recoverable attorneys' fees, and such other relief as the Court deems just and proper.

**COUNT SEVEN**
(UNJUST ENRICHMENT as and against GCPM)

171. Plaintiffs repeat and reallege paragraphs 1 through 170 as though fully set forth herein.

172. Plaintiffs plead this count in the alternative to their contract claims to the extent the Agreement is determined to be unenforceable or otherwise inapplicable.

173. Plaintiffs conferred substantial benefits on GCPM by providing access to the Red Sky travel insurance program, underwriting insurance coverage, administering the program, and enabling GCPM to market and sell travel insurance products to its customers.

174. GCPM knowingly accepted and retained those benefits.

175. GCPM also retained premium funds belonging to Plaintiffs that, in equity and good conscience, should have been remitted to Plaintiffs.

176. GCPM knew of the benefits conferred by Plaintiffs and voluntarily accepted them.

177. After Plaintiffs terminated GCPM's authority to participate in the Trip Preserver program, GCPM continued and, as of the filing of this Complaint, continues using Red Sky and the Trip Preserver service mark in the Terms and Conditions governing GCPM's vacation rental transactions.

178. GCPM thereby continues deriving commercial benefit from its association with Red Sky and the Trip Preserver program after Plaintiffs terminated GCPM's authority to do so.

179. It would be inequitable for GCPM to retain those benefits and premium funds without payment to Plaintiffs.

180. Plaintiffs sustained damages in an amount presently known to exceed $73,876.37.

WHEREFORE, Plaintiffs demand judgment against GCPM for restitution, prejudgment interest, taxable costs, and such other relief as the Court deems just and proper.

**COUNT EIGHT**
(FALSE DESIGNATION OF ORIGIN AND FALSE ASSOCIATION
15 U.S.C. § 1125(a) as and against GCPM)

181. Plaintiffs repeat and reallege paragraphs 1 through 180 as though fully set forth herein.

182. Red Sky uses the "Trip Preserver" name in commerce in connection with its suite of travel insurance products, including Sun Trip Preserver SFP90.

183. Under the Agreement, Red Sky authorized GCPM to use the Trip Preserver name in connection with GCPM's offering of Red Sky's travel insurance product to its vacation rental customers.

184. On February 24, 2026, Red Sky terminated the Agreement and expressly directed GCPM to cease offering the Plans and remove all references to Red Sky and the Plans from GCPM's website and marketing materials.

185. GCPM's authority to use the Red Sky and Trip Preserver names in connection with the offering and sale of Red Sky's travel insurance products terminated with the Agreement.

186. Despite termination of that authority, GCPM continues to use the Trip Preserver name in commerce in the Terms and Conditions governing vacation rentals offered through GCPM's website.

187. As of the filing of this Complaint, GCPM's current Terms and Conditions represent to customers that "Gulf Coast Vacation Rentals offers a third-party product, Trip Preserver," that customers may elect to purchase Trip Preserver coverage for their reservations, and that GCPM may collect a percentage of the fee paid for such coverage as a commission.

188. GCPM's continued use of the Trip Preserver name and representations concerning the availability of Trip Preserver coverage are without Plaintiffs' authorization or consent.

189. GCPM's continued use is likely to cause confusion, mistake, or deception concerning GCPM's affiliation, connection, or association with Red Sky

and concerning Red Sky's sponsorship or approval of GCPM's travel insurance offerings and commercial activities.

190. GCPM received express notice on February 24, 2026 that its authority to offer Red Sky's travel insurance products had terminated and that it was required to remove references to Red Sky and the Plans from its website.

191. GCPM nevertheless continues using the Trip Preserver name in its customer-facing Terms and Conditions and continues representing that Trip Preserver coverage is available through GCPM.

192. GCPM's unauthorized use of the Trip Preserver name has caused or is likely to cause damage to Plaintiffs' commercial interests, reputation, and control over the use of the Trip Preserver name.

193. GCPM's conduct constitutes false designation of origin and false association in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

WHEREFORE, Plaintiffs demand judgment against GCPM for all relief available under the Lanham Act, including injunctive relief prohibiting GCPM from using the Red Sky and Trip Preserver names or otherwise representing an affiliation with Red Sky, GCPM's profits and Plaintiffs' damages to the extent recoverable, costs, and such other relief as the Court deems just and proper.

**COUNT NINE**
(BREACH OF FIDUCIARY DUTY as and against Adair)

194. Plaintiffs repeat and reallege paragraphs 1 through 193 as though fully set forth herein.

195. GCPM undertook to collect insurance premiums from customers on Plaintiffs' behalf and possessed only a limited right to retain its contractual commission from those funds. The remaining net premium funds belonged to Plaintiffs.

196. Plaintiffs depended on GCPM to accurately identify and report the policies sold through its reservation systems, account for the premiums collected from insured guests, and remit the corresponding net premiums to Plaintiffs.

197. At all relevant times, Adair served as GCPM's Chief Operating Officer and participated directly in matters concerning GCPM's accounting, financial reporting, reservation systems, and administration of the travel insurance program.

198. Plaintiffs communicated directly with Adair concerning GCPM's failure to provide required premium reports and remit corresponding net premiums collected from GCPM's customers.

199. On January 23, 2025, Plaintiffs advised Adair that Red Sky had been paying claims submitted by GCPM customers but had not received corresponding premium reports for customers who purchased travel insurance. Plaintiffs

requested that GCPM provide the missing premium reports for the period from October 1, 2023 through December 31, 2024.

200. Adair acknowledged the reporting deficiency, responding that "if this is true, this is a problem." Adair further acknowledged that GCPM and Red Sky had "inquired about and followed up on this issue multiple times to ensure everything was working properly."

201. Despite acknowledging the reporting deficiency and Plaintiffs' prior efforts to address it, Adair advised Plaintiffs: "We've already closed our books on the timeframe in question."

202. Adair thus had actual knowledge of the unresolved reporting deficiency, Plaintiffs' prior efforts to obtain the missing reporting, and GCPM's closure of its books for the period containing the unreported transactions.

203. Adair also knew that Plaintiffs depended on GCPM's internal reservation and accounting records to identify the travel insurance policies sold through GCPM, the premiums collected for those policies, and the amounts owed to Plaintiffs.

204. Despite that knowledge, Adair did not provide Plaintiffs with a complete accounting identifying the travel insurance policies sold, premiums collected, and net premiums owed for the period at issue.

205. Through his position as GCPM's Chief Operating Officer and his direct involvement in addressing the reporting and accounting deficiencies concerning insurance premiums collected on Plaintiffs' behalf, Adair undertook responsibility for matters concerning the accounting and reporting of those funds.

206. Adair knew that Plaintiffs relied on GCPM and its officers responsible for those matters to accurately account for and report insurance transactions and premiums that remained within GCPM's exclusive records and control.

207. Adair breached his duties to Plaintiffs by failing to account for the policies and premiums at issue after receiving actual notice of the reporting deficiencies and by failing to address GCPM's continued failure to report transactions and remit net premiums collected on Plaintiffs' behalf.

208. Plaintiffs subsequently identified at least one previously unreported policy transaction involving GCPM guest J.S. GCPM collected a $930.62 insurance premium in connection with that transaction but failed to report the transaction or remit the associated $516.24 net premium.

209. Plaintiffs issued insurance coverage on the unreported J.S. policy and paid $2,557.86 in insurance benefits on the resulting claim.

210. On information and belief, the J.S. transaction was not an isolated occurrence, and GCPM collected additional premiums through transactions that it failed to report to Plaintiffs.

211. Adair's breach deprived Plaintiffs of information necessary to identify the policies issued through GCPM, premiums collected, amounts owed, and insurance exposure associated with policies that GCPM failed to report.

212. As a direct and proximate result of Adair's breach of fiduciary duty, Plaintiffs sustained damages, including the $2,557.86 paid on the previously unreported J.S. claim and additional damages associated with unreported policies and premiums, the full extent of which remains subject to discovery and accounting.

WHEREFORE, Plaintiffs demand judgment against Adair for compensatory damages, prejudgment interest, taxable costs, and such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Arch Insurance Company and Out of Towne LLC d/b/a Red Sky Travel Insurance, respectfully request that this Court enter judgment in their favor and against Defendants, Gulf Coast Property Management, LLC and Zachari Adair, and award the following relief:

A. Compensatory damages against GCPM and Adair in an amount to be proven at trial, including unpaid net travel insurance premiums presently known to exceed $73,876.37;

B. Treble damages against GCPM pursuant to sections 772.11 and 812.014, Florida Statutes, on Plaintiffs' civil theft claim in the amount of $221,629.11;

C. Compensatory damages against Adair arising from his breach of fiduciary duty, including the $2,557.86 claim payment associated with the previously unreported J.S. policy and additional damages attributable to his breach as established through discovery;

D. Prejudgment interest as permitted by Florida law;

E. Reasonable attorneys' fees and costs against GCPM to the extent authorized by section 772.11, Florida Statutes, 15 U.S.C. § 1117, or any other applicable provision of law;

F. Restitution and disgorgement of all premium funds wrongfully retained by GCPM;

G. An accounting of all travel insurance policies offered or sold by GCPM under the Travel Insurance Program Agreement or through the Trip Preserver program, all premiums collected, all commissions retained, all net premiums due, and all amounts remitted to Plaintiffs from the inception of the

Agreement through its termination, together with any Trip Preserver transactions occurring after termination;

H. An accounting sufficient to identify any customer who purchased or paid for Trip Preserver coverage through GCPM that GCPM failed to report to Plaintiffs;

I. Preliminary and permanent injunctive relief against GCPM prohibiting GCPM from using the Red Sky and Trip Preserver names or otherwise representing that GCPM is affiliated with, authorized by, sponsored by, or approved by Red Sky or authorized to offer Red Sky's travel insurance products;

J. GCPM's profits, Plaintiffs' damages, costs, and such other monetary relief available under 15 U.S.C. § 1117;

K. Additional compensatory damages for any unreported policies or unpaid premium amounts identified through discovery or accounting;

L. Post-judgment interest as provided by law; and

M. Such other and further legal or equitable relief as the Court deems just and proper.

Dated: October 2, 2026

Respectfully submitted,

*/s/ Joel McNabney*
Joel McNabney
Fla. Bar No. 106507
DAC BEACHCROFT LLP
800 Brickell Avenue, Suite 432
Miami, Florida 33131
Tel.: 786-358-2602
Email: jmcnabney@dacbeachcroft.com

***Attorneys for Plaintiffs***